## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

ALAN CALLAWAY,                          )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )          Case No. 06-CV-0579-CVE-PJC
                                        )
WILTEL COMMUNICATIONS, LLC              )
and J.H. BATTEN, INC.,                  )
                                        )
                    Defendants.         )

### OPINION AND ORDER

Now before the Court are Cross-Claimant's Motion to Reconsider Cross-Claimant's Motion

for Partial Summary Judgment and Brief in Support (Dkt. # 32) and Cross-Defendant J.H. Batten's

Motion for Conditional Renewal of Its Motion for Summary Judgment (Dkt. # 38).

### I.

WilTel Communications, LLC ("WilTel") entered into an agreement ("the Contract") with

J.H. Batten, Inc. ("Batten") to install power lines and fiber-optic cable at WilTel's Hartwell, Georgia

facility ("Hartwell facility").  The Contract was executed on August 3, 2000, and Batten began work

shortly thereafter.  As part of its work, Batten dug trenches for power lines and fiber optic cables.

WilTel ordered Batten to cease all work at the site on August 23, 2000, even though Batten had

completed only 60% of its work.  WilTel did not ask Batten to return to the Hartwell facility to

finish its work nor did WilTel pay Batten for its partial performance.  However, Batten asserts that

all holes and trenches were filled before Batten left the site.  On October 5, 2001, the parties reached

a settlement concerning the value of Batten's work, and WilTel agreed to pay Batten $211,460 to

resolve any claims Batten might have against WilTel under the Contract.  Paragraph 14 of the

settlement agreement provides:

> Termination of the Contracts and Effect of Termination.  Upon Execution of this Agreement, the Contracts shall terminate.  The termination of the Contracts, however, shall not affect the rights or obligations of either party pursuant to any provisions of the Contracts, or any provisions of this Agreement, that, by their sense and context, are intended to survive termination of the Contracts.  Without limitation of the foregoing, termination of the Contracts shall have no effect upon the obligations of JHB set forth in section 16.0 of the General Terms and Conditions of each of the Contracts.

Dkt. # 39, Ex. 14, at 3.  This clause terminated the Contract except for the rights and obligations noted.

On January 25, 2001, Alan Callaway ("Callaway"), an IBM technician, entered the Hartwell facility to perform repair and maintenance work.  Callaway alleged that he fell into a hole or a trench and suffered personal injuries as a result of the fall.  He filed this lawsuit on November 21, 2002 in Georgia state court.  WilTel removed the case to federal court in the Northern District of Georgia. Callaway filed an amended complaint on January 16, 2003 alleging that "Defendant Fifth John Doe was the contractor, upon information and belief to be a resident of the State of Georgia, who is responsible for constructing, excavating and/or digging the hole/ditch" that caused Callaway's injury.  Dkt. # 33, Ex. 4, at 4.  During the discovery process, Callaway determined that Batten was the contractor responsible for digging the trench that caused his injury, and he filed a second amended complaint identifying Batten as the fifth John Doe.

Based on the allegations of Callaway's second amended complaint, WilTel filed a cross-claim against Batten for indemnification under the Contract.  WilTel alleged that any trenches dug at the Hartwell facility were dug by Batten, and that Batten agreed to defend and indemnify WilTel for any claims arising out of Batten's work.  The Contract contains several clauses that impose a duty on Batten to indemnify WilTel for damage or injuries caused by Batten.  The Contract includes the following provisions related to indemnification:

5.01  All Work is to be done wholly at the risk of the Contractor.  Contractor shall take all precautions to prevent damage to private and public property, including, but not limited to, public utility company property and properties owned by municipalities.  Contractor will be fully responsible and liable for reimbursing property owners for any damages to their properties, which are caused by or arise out of or in connection with any acts, omissions, or trespasses of Contractor in performing the Work.  Contractor shall defend, indemnify, and hold Company harmless from and against any liability, damage, cost, or expense, including without limitation reasonable attorney's fees, caused by, arising out of, or in connection with said acts, omissions or trespasses.

5.03 . . . Contractor shall further take all safety and other precautions necessary to prevent damage, injury, and loss.  Contractor shall defend, indemnify, and hold Company harmless from any liability, damage, cost, or expense including attorney's fees and court costs arising out of noncompliance with this provision.

5.05  Contractor shall be liable for all claims for damages resulting from Contractor's acts or omissions in performing the work.  Contractor shall be responsible for any such claims for damages to all real and personal property and for all damages for injuries to persons resulting from Contractor's performance of the Work. Contractor shall defend, indemnify, and hold Company harmless from any liability, damage, cost or expense (including attorney's fees and court costs) resulting from, or arising in connection with Contractor's performance of the Work.

Id., Ex. 1, at 10, 11.  The General Terms and Conditions of the Contract contains a section on

indemnification, which provides:

20.01  Contractor agrees to assume, protect, defend, indemnify, and save Company harmless from and against any and all claims or suits of any kind whatsoever (except those by Contractor on the Contract Documents and those based on the intentional or grossly negligent acts or omissions of Company, its officers, agents, or employees), and any and all attendant expenses, including reasonable attorney's fees and court costs, arising out of, occurring in, or in connection with, Contractor's performance of the Work.

20.02 Contractor shall release, indemnify, and hold Company harmless from and against any and all claims arising from or relating to any loss or damage to property of any kind owned or leased by Contractor or its employees, servants, agents, and Subcontractors.

20.03 All obligations to assume, protect, defend, indemnify, and save Company harmless shall extend to Companies officers, directors, employees, agents, shareholders, and to companies and other legal entities that control, are controlled by,

3

are subsidiaries of, or are affiliated with Company and the respective officers, directors, agents and employees of such companies or entities and shall continue for so long as any of the named indemnities may be subjected to claims or suits calling for such obligations, notwithstanding the completion, acceptance, or payment of the Work.

Id. at 28.  Batten also agreed that it was "fully responsible to [WilTel] for the acts or omissions of his subcontractors, and of persons either directly or indirectly employed by them, as he is for the acts of omissions of persons directly employed by him."  Id. at 29.

Batten filed a motion for summary judgment concerning Callaway's claims and WilTel's cross-claim for indemnification.  Batten argued that it hired Honeycutt Electic ("Honeycutt") as subcontractor to dig trenches, and Honeycutt verified that all trenches were filled at the time WilTel ordered Batten to cease work.  WilTel responded that Batten was the sole contractor responsible for digging trenches at the Hartwell facility, and Callaway's fall on January 25, 2001 would not have occurred except for Batten's or its subcontractor's failure to fill in a trench.  The Georgia federal judge found that Batten's argument that all holes were filled by August 23, 2000 was contradicted by a photograph of the worksite, and a genuine issue of material fact remained as to whether Batten left any trenches unfilled after August 23, 2000.  That judge also denied Batten's motion for summary judgment on WilTel's cross-claim, because there was a genuine issue of material fact concerning the amount of work completed by Batten when it was ordered to leave the work site.

WilTel subsequently filed a motion for summary judgment as to Batten's liability on WilTel's cross-claim for identification.  While WilTel's motion was pending, Callaway agreed to settle his claims against defendants for $116,000, and WilTel paid the full amount of the settlement.  It is not clear whether Batten participated in the settlement discussions, but it is undisputed that Batten did not pay any part of the settlement.  After the settlement, the sole remaining claim in this

4

lawsuit was WilTel's cross-claim against Batten.  The Georgia federal judge denied WilTel's motion

for partial summary judgment on January 27, 2006 and stated that:

> Through its motion for summary judgment, WilTel argues that the allegations in the
> Complaint and the cross-claim, i.e. that Batten negligently left an open ditch on the
> property, trigger Batten's indemnity obligation and its duty to defend.  The Court
> disagrees.  The contract does not require indemnification based solely on allegations.
> Rather, in order for indemnity to be triggered, Batten must have committed some
> wrongful or negligent act in the performance of the work.

Id., Ex. 13, at 6.  That judge judge found that there was a genuine issue of material fact concerning

Batten's negligence, specifically whether Batten left any unfilled trenches, and it was unclear if the

indemnification agreement applied.  The case was then transferred to this District. WilTel claims

that the court effectively rewrote the contract by incorporating a negligence standard into the

indemnification agreement and, therefore, this Court should reconsider the order denying partial

summary judgment to prevent clear error or manifest injustice.

## II.

WilTel asks the Court to reconsider the denial of its motion for partial summary judgment

on the ground that the previous court clearly misinterpreted the plain and unambiguous language of

the indemnification agreement.  Batten responds that the contract requires WilTel to prove that

Batten committed a negligent act or omission before the indemnification agreement applies.  The

Court treats WilTel's motion to reconsider under Fed.R.Civ.P. 54(b), as the underlying order is not

a final order or judgment. See Raytheon Constructors, Inc. v. Asarco Inc., 368 F.3d 1214, 1217 (10th

Cir.2003).  Rule 54(b) provides that any order that does not adjudicate all of the rights and liabilities

of the parties "is subject to revision at any time before entry of judgment."  In this case, the previous

judge's denial of WilTel's motion for partial  summary judgment is subject to revision and a motion

to reconsider is the appropriate vehicle to challenge that ruling.[1]   Lamb v. Scotts Miracle-Gro Co.,

2007 WL 2688422 (E.D. Okla. 2007).   A motion to reconsider is appropriate when the court has

"misapprehended the facts, a party's position, or the controlling law."   Servants of Paraclete v. Doe,

204 F.3d 1005, 1012 (10th Cir. 2000).

As with any other contract, the "cardinal rule in the interpretation of an indemnity contract

is to 'ascertain the intention of the parties and to give effect to that intention if it can be done

consistently with legal principles.'"   Estate of King v. Wagoner County Bd. of County Comm'rs,

146 P.3d 833, 838 (Okla. Civ. App. 2006).   "A contract must be considered as a whole so as to give

effect to all its provisions without narrowly concentrating upon some clause or language taken out

of context."   Mercury Inv. Co. F.W. Woolworth Co., 706 P.2d 523, 529 (Okla. 1985).   When a

contract contains clauses that appear to conflict, a court should construe the contract to reconcile the

conflict by any reasonable construction.   Campbell v. Indep. Sch. Dist. No. 01 of Okmulgee County,

77 P.3d 1034, 1039-40 (Okla. 2003).   By statute, Oklahoma provides certain rules for the

interpretation of indemnification agreements:

> 1.   Upon an indemnity against liability, expressly or in other equivalent terms, the person
> indemnified is entitled to recover upon becoming liable.
>
> 2.   Upon an indemnity against claims or demands, or damages or costs, expressly or in other
> equivalent terms, the person indemnified is not entitled to recover without payment thereof.

---

[1]   Batten argues that WilTel's motion to reconsider is untimely under a local rule of the
Northern District of Georgia.   Local Rule 7.2(E) of the Northern District of Georgia
discourages motions to reconsider and requires that all motions to reconsider "an order of
judgment" must be filed with ten days of entry of judgment.   However, this case is no longer
pending in the Northern District of Georgia, and this Court has its own local rules.   See Van
Dusen v. Barrack, 376 U.S. 612, 639 n.40 (1964). Even if the Court considered the cited
rule, it is not applicable because the rule applies only to motions to reconsider final orders.

3.   An indemnity against claims or demands, or liability, expressly or in other equivalent terms, embraces the costs of defense against such claims, demands or liability incurred in good faith, and in the exercise of reasonable discretion.

4.   The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity; but the person indemnified has the right to conduct such defense, if he chooses to do so.

5.   If, after request, the person indemnifying neglects to defend the person indemnified, a recovery against the latter, suffered by him in good faith, is conclusive in his favor against the former.

OKLA. STAT. tit. 15, § 427.

WilTel primarily relies on Kelly-Springfield Tire Co. v. Mobil Oil Corp., 551 P.2d 671

(Okla. Civ. App. 1975) ("Kelly"). In Kelly, Billy H. Roberts ("Roberts") suffered personal injuries

when a tire exploded. The tire was manufactured by Kelly-Springfield Tire Company ("Kelly") and

was distributed by Mobil Oil Company ("Mobil"). Id. at 672. Roberts sued Kelly, Mobil and the

retailer, R. L. DeYong d/b/a DeYong Distributor ("DeYong"). Defendants settled with Roberts for

$30,000. Mobil initially paid $15,000 of the settlement and judgment was taken against Kelly and

DeYong for the remainder. However, Mobil subsequently paid the other $15,000 of the settlement.

Mobil sought indemnification from Kelly for the full amount of the settlement based on an

indemnification agreement in a letter from Kelly to Mobil. The agreement stated:

Seller (Kelly) agrees to indemnify Buyer (Mobil) and save it and/or its . . . reseller purchasers harmless from every claim, demand, loss, expense, cost, damage or injury, including attorneys' fees and/or settlement approved by Seller, which may arise or be asserted based upon a claim of injury or damage of any kind to any person or property, real or personal, sustained by any individual . . . claimed to have been caused by, resulting from, arising out of, or attributable to defective workmanship or material incorporated in any product sold to Buyer hereunder.

Id. at 673. Based on the indemnification agreement, Mobil filed a cross-claim against Kelly for

indemnification, including attorney fees incurred as a result of Kelly's refusal to defend Mobil at

7

the inception of the lawsuit.  The Court entered judgment against Kelly on Mobil's cross-claim, and

ordered it to pay the judgment and reasonable attorney fees incurred by Mobil to defend against

Roberts' claims.

Kelly appealed on the ground that the indemnification agreement did not apply unless Mobil

offered proof of Kelly's negligence.  The Oklahoma Court of Civil Appeals upheld the judgment

against Kelly.  That court focused on language in the indemnification agreement requiring Kelly to

indemnify Mobil for "any such claim or demand" and stated:

> At no place in the indemnity agreement do we find that Kelly must be proven guilty
> of negligence, but instead it says that Kelly will save Mobil and DeYong harmless
> from every claim or injury, including attorneys' fees, which may arise or be asserted,
> based upon a claim of injury, claimed to have been caused by or attributable to
> defective workmanship or material.

Id. at 673-74.  Roberts alleged that his injuries were caused by a defective and unreasonably

dangerous tire, and this was sufficient to trigger Kelly's duties under the indemnification agreement.

Although there was no proof of a specific defect in the tire, it was undisputed that the tire exploded

and Kelly manufactured the tire.  The Court of Civil Appeals found that "where the indemnitor

denies liability under the indemnity contract and refuses to assume the defense of the claim, then

the indemnitee is in full charge of the matter and may make a good faith settlement without

assuming the risk of being able to prove absolute legal liability or the actual amount of damages."

Id. at 675 (quoting Chicago, R.I & P.R. Co. v. Dobry Flour Mills, Inc., 211 F.2d 785, 788 (10th Cir.

1954)).  Otherwise, the indemnitee would not be free to settle a case after the indemnitor denied

liability, and this result was not intended by the parties' indemnification agreement.

Kelly was not cited in WilTel's motion for summary judgment.  However, this Court has

reviewed it and finds that it is controlling authority that can not be overlooked.  Batten argues that

the Kelly does not apply, because the indemnification agreement is not a "claims-only" agreement.

The Court disagrees.  Based on the plain language of the Contract, the indemnification agreement

requires Batten to indemnify WilTel based on claims arising out of Batten's work.  Although Batten

cites many contractual provisions, the indemnification agreement is found in paragraph 20.01 of the

Contract, and it states:

> 20.01  Contractor agrees to assume, protect, defend, indemnify, and save Company
> harmless from and against any and all claims or suits of any kind whatsoever (except
> those by Contractor on the Contract Documents and those based on the intentional
> or grossly negligent acts or omissions of Company, its officers, agents, or
> employees), and any and all attendant expenses, including reasonable attorney's fees
> and court costs, arising out of, occurring in, or in connection with, Contractor's
> performance of the Work.

Dkt. # 33, Ex. 1, at 28 (emphasis added).  The Contract provides that "[i]n the event of a conflict

among the Contract Documents, the more specific Contract Document shall prevail over the less

specific . . . ."  Id. at 20.  The Contract also states that "any right or remedy of the Company shall

be cumulative and without prejudice to any other right or remedy . . . " Id.  Applying the rules of

interpretation provided by the Contract, the indemnification agreement contained in paragraph 20.01

is more specific than the general responsibilities outlined in section 5 of the Contract, and it should

control over more general responsibilities imposed on Batten.  Even if paragraph 20.01 conflicts

with section 5 of the Contract, it can be read as cumulative to the duties imposed by section 5 and,

rather than creating a conflict, paragraph 20.01 simply creates an additional duty for Batten to

indemnify WilTel on a claims-only basis.

The Court finds that the parties intended for Batten to indemnify WilTel for claims of injury

with or without proof of Batten's negligence.  The previous judge based his denial of WilTel's

motion for summary judgment because he found a fact dispute "about who was responsible for

leaving the hole on WilTel's property." Id., Ex. 13, at 6.  Under Kelly, this is not a genuine issue

of material fact because it is irrelevant whether Batten disputes that it dug the trench that caused

plaintiff's injury. Callaway alleged that Batten was "responsible for constructing, excavating and/or

digging the hole/ditch" that caused plaintiff's injury and that Batten was "jointly and severally liable

to him.  Id., Ex. 4. at 4.  It is sufficient that Callaway alleged Batten's performance of the work

caused his injury.  Batten breached the indemnification agreement when it refused to comply with

its contractual obligation to defend and indemnify WilTel, and Batten is liable to WilTel under the

indemnification agreement.

Batten argues that the settlement agreement between WilTel and Batten to resolve payment

for Batten's work terminated the indemnification agreement in the Contract.  The settlement

agreement states that "[u]pon Execution of this Agreement, the Contracts shall terminate.  The

termination of the Contracts, however, shall not affect the rights or obligations of either party

pursuant to any provisions of the Contracts, or any provisions of this Agreement, that, by their sense

and context, are intended to survive termination of the Contracts." Dkt. # 39, Ex. 14, at 3 (emphasis

added).  WilTel states, and the Court agrees, that the indemnification agreement was intended to

survive termination of the Contract.  The settlement agreement resolved all "rights, claims, demands,

actions and causes of action that [Batten] now has against Williams." Id. at 1.  However, WilTel

did not affirmatively waive any claims it might have against Batten nor did the parties know about

Callaway's lawsuit at the time they entered this settlement agreement.  In fact, the settlement

agreement preserves the rights and obligations of the parties "in respect of the Projects and all

matters related to the Projects shall continue to be governed by the terms of the Contracts." Id. at

3. Indemnification for claims arising out of Batten's work clearly constitutes a matter relating to

Batten's work at the Hartwell facility.  Batten ignores the language in the settlement agreement concerning provisions "intended to survive termination of the Contracts," and this omission is fatal to Batten's interpretation of the settlement agreement.  The Court finds that the indemnification agreement survived termination of the Contract, and Batten is required to indemnify WilTel.

Batten also argues that WilTel breached the Contract when it refused to immediately pay Batten after ordering Batten to cease work at the Hartwell facility, and Batten implies that this provides a legal basis to void the indemnification agreement in the Contract.  However, Batten cites no legal authority to support this proposition.  The Court has researched this issue and finds no Oklahoma law that permits a party to escape its obligations under a contract simply because the other party to the contract has allegedly breached the contract.  In any event, Batten has waived this argument by settling its claims under the Contract and it has received payment for its work.

Wiltel's motion for summary judgment should have been granted.  There are no genuine issues of material fact precluding summary judgment and, as a matter of law, WilTel is entitled to summary judgment on Batten's liability under the indemnification agreement.  The issue of damages must still be resolved.  The Court finds that the issue of damages, including attorney fees, must be submitted to a jury for resolution.  While normally attorney fees are resolved post-judgment under Fed. R. Civ. P. 54(d), WilTel's right to attorney fees arises under the indemnification agreement and attorney fees are an element of damages for Batten's breach of contract.  The jury, not the Court, must determine a reasonable attorney fee under the indemnification agreement.  At trial, WilTel may also present evidence concerning any other element of damages it claims it is entitled to under the indemnification agreement.

**III.**

Batten moves for reconsideration of its motion for summary judgment if the Court elects to reconsider WilTel's motion for partial summary judgment.  Batten does not identify any basis for reconsideration recognized by Rule 59(e) but, as a ground for reconsideration, states that "it would only be fair and equitable to reconsider both Motions.  Such would also promote judicial economy." Dkt. # 38, at 1.  The Court notes that Batten has already asked for reconsideration of denial of its motion for summary judgment, and its motion to reconsider was summarily denied.  Dkt. # 40, Ex. 2.  Batten's motion for summary judgment has been considered twice, and no benefit will be derived from considering it a third time.  Therefore, the Court finds that Batten's motion for conditional renewal of its motion for summary judgment should be denied.

**IT IS THEREFORE ORDERED** that Cross-Claimant's Motion to Reconsider Cross-Claimant's Motion for Partial Summary Judgment and Brief in Support (Dkt. # 32) is **granted**, and WilTel is granted a partial summary judgment of liability against Batten on its cross-claim for indemnification. Cross-Defendant J.H. Batten's Motion for Conditional Renewal of Its Motion for Summary Judgment (Dkt. # 38) is **denied**.

**IT IS FURTHER ORDERED** that: the pretrial conference remains scheduled for October 3, 2007 at 11:00 a.m; settlement conference remains scheduled for October 3, 2007 at 1:30 p.m.; and trial remains scheduled for October 15, 2007 at 9:30 a.m. on the issue of damages.

**DATED** this 2nd day of October, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

12